## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MITCH SHAHEEN, an individual,

     Plaintiff,

v.

ECOLOGY COATINGS, INC., a Nevada
Corporation,

     Defendant.

Case No.

Honorable

_____/

HERTZ SCHRAM PC
By: Walter A. Piszczatowski (P27158)
    Deborah S. Lapin (P59027)
Attorneys for Plaintiff
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
248-335-5000

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Mitch Shaheen ("Plaintiff" or "Shaheen"), by and through his

attorneys, HERTZ SCHRAM PC, and for his Complaint against the above-named Defendant,

states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Mitch Shaheen ("Shaheen") is an individual who resides in the State of

Ohio and who conducts business in Oakland County, State of Michigan.

2.     Defendant Ecology Coatings, Inc. ("Defendant" or "Ecology") is a Nevada

corporation which during all relevant times herein was conducting business in Oakland County,

State of Michigan and whose officers currently work in Auburn Hills, Michigan based upon the

information found on the State of Nevada business look-up website. **Exhibit A**.

3.     Upon information and belief, Ecology has its principal place of business in the State of Michigan.

4.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest and attorney fees.

5.     This Court has jurisdiction over this matter pursuant to 28 USCA §1332.

## GENERAL ALLEGATIONS

6.     At some point prior to or on June 18, 2008, Ecology invited Shaheen to witness a live demonstration of its technology and to meet the executives of the company.  The purpose of the invitation was for Ecology to ask for a "Bridge Loan" from Shaheen.

7.     Ecology advised Shaheen that Ecology was soon to receive a substantial investment which would be used to repay Shaheen for any funds loaned.

8.     After his discussions with Ecology representatives on or prior to June 18, 2008, Shaheen loaned Ecology One Hundred Fifty Thousand Dollars ($150,000.00) on June 18, 2008.

9.     In conjunction with Shaheen's loan of One Hundred Fifty Thousand Dollars ($150,000.00) to Ecology on June 18, 2008, Ecology executed a Promissory Note ("Note 1").

10.     Note 1 was executed by and between Ecology and Shaheen on June 18, 2008 for the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00), together with "interest equal to 25% per annum on the unpaid principal balance, computed on a three hundred sixty-five (365) day year, during the term of the Note."  The maturity date of Note 1 was July 18, 2008.  **Exhibit B** - Note 1.

11.     On July 10, 2008, Shaheen and Ecology executed an Allonge to Promissory Note Dated June 18, 2008 (the "Allonge") which amended Paragraph 7 of Note 1 and gave

**2**

Shaheen an option to convert Note 1 into securities if Ecology completed a New Offering prior to the maturity date set forth in Note 1. **Exhibit C** - Allonge.

12.    On or about July 10, 2008, due to Ecology's request to borrow more funds from Shaheen and the promise that Ecology would repay Shaheen upon its anticipated receipt of the investment, Shaheen agreed to loan Ecology an additional One Hundred Thousand Dollars ($100,000.00).

13.    In conjunction with Shaheen's loan of One Hundred Thousand Dollars ($100,000.00) to Ecology on July 10, 2008, Ecology executed a Promissory Note ("Note 2").

14.    Note 2 was executed by and between Ecology and Shaheen on July 10, 2008 for the principal sum of One Hundred Thousand Dollars ($100,000.00), together with "interest equal to 25% per annum on the unpaid principal balance, computed on a three hundred sixty-five (365) day year, during the term of the note." The maturity date of the Note 2 was August 10, 2008. **Exhibit D -** Note 2.

## COUNT I – BREACH OF CONTRACT – NOTE 1

15.    Plaintiff repeats and incorporates all of the prior Paragraphs of this Complaint as though fully set forth herein.

16.    Note 1 was a valid and binding contract wherein Shaheen was entitled to repayment of the One Hundred Fifty Thousand Dollars ($150,000.00) that he loaned to Ecology on or about June 18, 2008.

17.    Subsequent to the maturity date of July 18, 2008, Shaheen demanded repayment of the One Hundred Fifty Thousand Dollars ($150,000.00) plus accrued and unpaid interest from Ecology but Ecology has failed to pay Shaheen thereby breaching its agreement with Shaheen to Shaheen's detriment.

**3**

18.    Ecology failed to pay Shaheen all amounts due and payable under Note 1 thereby breaching its agreement with Shaheen to Shaheen's detriment.

19.    As a direct proximate result of Ecology's wrongful conduct, Shaheen has incurred damages in an amount of One Hundred Fifty Thousand Dollars ($150,000.00) plus interest and costs.

WHEREFORE, Plaintiff Shaheen respectfully requests that this Honorable Court enter a Judgment in his favor against Ecology in an amount of One Hundred Fifty Thousand Dollars ($150,000.00) plus interest, attorney fees and costs and award such other and further relief that this Court deems equitable and just.

## COUNT II – BREACH OF CONTRACT – NOTE 2

20.    Plaintiff repeats and incorporates all of the prior Paragraphs of this Complaint as though fully set forth herein.

21.    Note 2 was a valid and binding contract wherein Shaheen was entitled to repayment of the One Hundred Thousand Dollars ($100,000.00) that he loaned to Ecology on or about July 18, 2008.

22.    Upon the maturity date of August 18, 2008, Shaheen demanded repayment of the One Hundred Thousand Dollars ($100,000.00) plus accrued and unpaid interest from Ecology but Ecology has failed to pay Shaheen thereby breaching its agreement with Shaheen to Shaheen's detriment.

23.    Ecology failed to pay Shaheen all amounts due and payable under Note 2 thereby breaching its agreement with Shaheen to Shaheen's detriment.

LAW OFFICES HERTZ SCHRAM PC

**4**

24.   As a direct and proximate result of Ecology's wrongful conduct, Shaheen has incurred damages in an amount of One Hundred Thousand Dollars ($100,000.00) plus interest and costs.

WHEREFORE, Plaintiff Shaheen respectfully requests that this Honorable Court enter a Judgment in his favor against Ecology in the amount of One Hundred Thousand Dollars ($100,000.00) plus interest, attorney fees and costs and award such other and further relief that this Court deems equitable and just.

Respectfully submitted,

HERTZ SCHRAM PC

By: /s/ Walter A. Piszczatowski
    Walter A. Piszczatowski (P27158)
    Deborah S. Lapin (P59027)
    Attorneys for Plaintiff
    1760 South Telegraph Road, Suite 300
    Bloomfield Hills, MI  48302
    248-335-5000

Dated: October 26, 2010

## DEMAND FOR JURY TRIAL

Now comes Plaintiff Mitch Shaheen, by and through his attorneys, Hertz Schram PC, and hereby demands a trial by jury.

Respectfully submitted,

HERTZ SCHRAM PC

By: /s/ Walter A. Piszczatowski
    Walter A. Piszczatowski (P27158)
    Deborah S. Lapin (P59027)
    Attorneys for Plaintiff
    1760 South Telegraph Road, Suite 300
    Bloomfield Hills, MI  48302
    248-335-5000

Dated: October 26, 2010

T:\Lapin, Deborah\Complaint -  Shaheen V. Ecology US District Court.Doc

LAW OFFICES HERTZ SCHRAM PC

# EXHIBIT

# A

# ECOLOGY COATINGS, INC.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | Active | File Date: | 2/06/2002 |
| Type: | Domestic Corporation | Entity Number: | C3012-2002 |
| Qualifying State: | NV | List of Officers Due: | 2/28/2011 |
| Managed By: | | Expiration Date: | |
| NV Business ID: | NV20021223287 | Business License Exp: | 5/31/2011 |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | THE CORPORATION TRUST COMPANY OF NEVADA | Address 1: | 311 S DIVISION ST |
| Address 2: | | City: | CARSON CITY |
| State: | NV | Zip Code: | 89703 |
| Phone: | | Fax: | |
| Mailing Address 1: | | Mailing Address 2: | |
| Mailing City: | | Mailing State: | NV |
| Mailing Zip Code: | | | |
| Agent Type: | Commercial Registered Agent - Corporation | | |
| Jurisdiction: | NEVADA | Status: | Active |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | 0 | Capital Amount: | $ 100,000.00 |
| Par Share Count: | 100,000,000.00 | Par Share Value: | $ 0.001 |

## Officers

☒ Include Inactive Officers

### President - ROBERT CROCKETT

| | | | |
|---|---|---|---|
| Address 1: | 2701CAMBRIDGE COURT | Address 2: | SUITE 100 |
| City: | AUBURN HILLS | State: | MI |
| Zip Code: | 48326 | Country: | USA |
| Status: | Active | Email: | |

### Secretary - DANIEL IANNOTTI

| | | | |
|---|---|---|---|
| Address 1: | 2701 CAMBRIDGE COURT | Address 2: | SUITE 100 |
| City: | AUBURN HILLS | State: | MI |
| Zip Code: | 48326 | Country: | USA |
| Status: | Active | Email: | |

### Director - JOSEPH NIRTA

| | | | |
|---|---|---|---|
| Address 1: | 2701 CAMBRIDGE COURT | Address 2: | SUITE 100 |
| City: | AUBURN HILLS | State: | MI |
| Zip Code: | 48326 | Country: | USA |
| Status: | Active | Email: | |

### Treasurer - KEVIN STOLZ

| | | | |
|---|---|---|---|
| Address 1: | 2701 CAMBRIDGE COURT | Address 2: | SUITE 100 |
| City: | AUBURN HILLS | State: | MI |
| Zip Code: | 48326 | Country: | USA |
| Status: | Active | Email: | |

## Actions\Amendments

# EXHIBIT B

EX-10.38.2 k27634exv10w38.htm PROMISSORY NOTE DATED JUNE 18, 2008

No. 1

US $150,000.00

**Exhibit 10.38**

June 18, 2008

## PROMISSORY NOTE

*FOR VALUE RECEIVED*, the undersigned, Ecology Coatings, Inc., a Nevada corporation (the "The Maker"), promises to pay to the order of Mitch Shaheen (the "Holder"), the principal amount of One Hundred Fifty Thousand and 00/100 dollars ($150,000.00), together with interest thereon as provided below.

### ARTICLE I

### TERMS OF REPAYMENT

*1. Interest.* The Note shall bear interest ("Interest") equal to twenty-five (25%) percent per annum on the unpaid principal balance, computed on a three hundred and sixty-five (365) day year, during the term of the Note. The Maker shall pay all Interest on or before the Maturity Date. In no event shall the rate of Interest payable on this Note exceed the maximum rate of interest permitted to be charged under applicable law.

*2. Payments.* All payments by the Maker under this Note shall first be credited against costs and expenses provided for hereunder, second to the payment of any penalties, third to the payment of accrued and unpaid interest, if any, and the remainder shall be credited against principal. All payments due hereunder shall be payable in legal tender of the United States of America, and in same day funds delivered to the Holder by cashier's check, certified check, or any other means of guaranteed funds to the mailing address provided below, or at such other place as the Holder or any holder hereof shall designate in writing for such purpose from time to time. If a payment hereunder otherwise would become due and payable on a Saturday, Sunday or legal holiday, the due date thereof shall be extended to the next succeeding business day, and Interest, if any, shall be payable thereon during such extension.

*3. Maturity Date.* All outstanding principal and interest shall be payable on July 18, 2008 (the "Maturity Date").

*4. Pre-Payment Demand.* If at any time before the Maturity Date the Maker completes an underwritten public offering of its common stock or other form of security convertible into common stock pursuant to an effective registration statement under the Securities Act of 1933 (the "Act"), as amended, or a managed private offering exempt from registration under Section 4(2) of the Act and Regulation D promulgated thereunder (collectively, a "New Offering") which results in proceeds received by the Maker net of underwriting discounts and commissions, of at least One Million and 00/100 dollars ($1,000,000.00) (a "Pre-Payment Event"), then at the sole and absolute discretion of the Holder, and upon written demand to the Maker (the "Pre-Payment Notice"), all amounts owed under this

1

Note shall become due and payable within fifteen (15) days following Maker's receipt of the Pre-Payment Notice.

   *5. Exemption from Restrictions.* It is the intent of the Maker and the Holder in the execution of this Note that the indebtedness hereunder be exempt from the restrictions of the usury laws of any applicable jurisdiction. The Maker and the Holder agree that none of the terms and provisions contained herein shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of any applicable jurisdiction. In such event, if any holder of this Note shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of the maximum rate permitted to be charged by the laws of any applicable jurisdiction, all such sums deemed to constitute interest in excess of such maximum rate shall, at the option of such holder, be credited to the payment of this principal amount due hereunder or returned to the Maker.

   *6.* The indebtedness evidenced by this Note is hereby expressly subordinated, to the extent and in the manner hereinafter set forth, in right of payment to the prior payment in full of all the Maker's Senior Indebtedness, as hereinafter defined.

   a.    As used in this Note, the term "Senior Indebtedness" shall mean the principal of an unpaid accrued interest on: (i) indebtedness of the Maker or with respect to which the Maker is a guarantor, in excess of Fifty Thousand and 00/100 dollars ($50,000.00), to banks, insurance companies, or other financial institutions regularly engaged in the business of lending money, which is for money borrowed by the Maker in the ordinary course of business; (ii) any of the three (3) promissory notes made by the Maker in favor of Hayden Capital USA, LLC, a Delaware limited liability company, on February 4, 2008 and May 20, 2008, (the "Senior Notes"); (iii) any of the two (2) promissory notes made by the Maker dated March 1, 2008, or (iv) any such indebtedness or any debentures, notes or other evidence of indebtedness issued in exchange for such Senior Indebtedness, or any indebtedness arising from the satisfaction of such Senior Indebtedness by a guarantor.

   b.    If there should occur any receivership, insolvency, assignment for the benefit of creditors, bankruptcy, reorganization or arrangements with creditors (whether or not pursuant to bankruptcy or other insolvency laws) sale of all or substantially all of the assets, dissolution, liquidation or nay other marshaling of the assets and liabilities of the Maker, or if this Note shall be declared due and payable upon the occurrence of any Event of Default with respect to any Senior Indebtedness, then: (i) no amount shall be paid by the Maker in respect to the principal of and interest on this Note at the time outstanding, unless and until the principal of an interest on the Senior Indebtedness then outstanding shall be paid in full; (ii) no claim or proof of claim shall be filed with the Maker by or on behalf of the Holder that shall assert any right to receive payments in respect of the principal of and interest on this Note, except

2

subject to the payment in full of the principal of and interest on all of the Senior Indebtedness then outstanding. If there occurs an Event of Default that has been declared in writing with respect to any Senior Indebtedness, or in the instrument under which any Senior Indebtedness is outstanding, permitting the holder of such Senior Indebtedness to accelerate the maturity thereof, then, unless and until such Event of Default shall have been cured or waived or shall have ceased to exist, or all Senior Indebtedness shall have been paid in full, no payment shall be made in respect of the principal of or interest on this Note, unless within thirty (30) days after the happening of such event of default, the maturity of such Senior Indebtedness shall not have been accelerated.

c.  Subject to the rights, if any, of the holders of Senior Indebtedness under this Section 6 to receive cash, securities or other properties otherwise payable or deliverable to the Holder of this Note, nothing contained in this Section 6 shall impair, as between the Company and the Holder, the obligation of the Company, subject to the terms and conditions hereof, to pay to the Holder the principal hereof and interest hereon as and when the same become due and payable, or shall prevent the Holder of this Note, upon default hereunder, from exercising all rights, powers and remedies otherwise provided herein or by applicable law.

d.  Subject to the payment in full of all Senior Indebtedness and until this Note shall be paid in full, the Holder shall be subrogated to the rights of the holders of Senior Indebtedness (to the extent of payments or distributions made to such holders of Senior Indebtedness pursuant to the provisions of Section 6 above) to receive payments or distributions of assets of the Maker applicable to the Senior Indebtedness. No such payments or distributions applicable to the Senior Indebtedness shall, as between the Company and its creditors, other than the holders of Senior Indebtedness and the Holder, be deemed to be a payment by the Company to or on account of this Note; and for the purposes of such subrogation, no payments or distributions to the holders of Senior Indebtedness to which the Holder would be entitled except for the provisions of this Section 6 shall, as between the company and its creditors, other than the holders of Senior Indebtedness and the Holder, be deemed to be a payment by the Company to or on account of the Senior Indebtedness.

## ARTICLE II

## COVENANTS

*7. Conversion into Common Stock.* If at any time before the Maturity Date, the Maker completes a New Offering, the Maker shall give the Holder the option to convert this Note, in whole or in part, into Common Stock of the Maker based on a conversion price equal to

3

the lesser of: (a) $.50 per share, or: (b) the average price at which the Maker sells its Common Stock in the New Offering (the "Conversion Price")(the "Conversion Shares").

8. *Options.* In partial consideration of this Note, the Maker shall issue to Holder a option to purchase One Hundred Thousand (100,000) shares of the Maker's Common Stock (the "Consideration Option"). The Consideration Option will be immediately exercisable, in whole or part, into the "Underlying Shares." The Options will have an exercise price equal to Zero and 75/100 dollars ($.75). The Options will be delivered in a form acceptable to Holder.

9. *Piggyback Registration.* If the Conversion Shares and the Underlying Shares (collectively, the "Shares") have not been otherwise registered and at any time the Maker proposes to file a registration statement, whether or not for sale for the Maker's own account, on a form and in a manner that would also permit registration of shares (other than in connection with a registration statement on Forms S-4 or S-8 or any similar or successor form) the Maker shall give to Holder, written notice of such proposed filing promptly, but in any case at least twenty (20) days before the anticipated filing. The notice referred to in the preceding sentence shall offer the holder(s) holding the Shares the opportunity to register such amount of the Shares as he may request (a "Piggyback Registration"). Subject to this Section, the Maker will include in each such Piggyback Registration (and any related qualification under state blue sky laws and other compliance filings, and in any underwriting involved therein) that portion of the Shares with respect to which the Maker has received written requests for inclusion therein within twenty (20) days after the written notice from the Maker is given. The holders holding any portion of the Shares will be permitted to withdraw all or part of the Shares from a Piggyback Registration at any time prior to the effective date of such Piggyback Registration. Notwithstanding the foregoing, the Maker will not be obligated to effect any registration of shares under this Paragraph 7 as a result of the registration of any of its securities solely in connection with mergers effected pursuant to a Form S-4 Filing.

10. *Covenants Regarding Registration*

a.   The Maker shall use its best efforts to have any registration statement declared effective at the earliest possible time, and shall furnish such number of prospectuses as shall be reasonably required.

b.   The Maker shall bear all costs, fees and expenses in connection with a Piggyback Registration.

c.   The Maker will take all necessary action which may be required in qualifying qualifying or registering the Shares included in any Piggyback Registration for offering and sale under the securities or blue sky laws of such states as are requested by the holders of such Shares, provided that the Maker shall not be obligated to execute or file any general consent to service or process or to qualify as a foreign corporation to do business under the laws of any such jurisdiction.

4

**11. *Indemnification.*** The Maker shall, at The Maker's expense, protect, defend, indemnify, save and hold Holder harmless against any and all claims, demands, losses, expenses, damages, causes of action (whether legal or equitable in nature) asserted by any person or entity arising out of, caused by, or relating to the Note, including without limitation the construction of the Note and the use or application of the proceeds of the Note, and The Maker shall pay Holder upon demand all claims, judgments, damages, losses and expenses (including court costs and reasonable attorneys' fees and expenses) incurred by Holder as a result of any legal or other action arising out of the Note as aforesaid.

**12. *Attorneys Fees.*** The Maker shall reimburse Holder for all reasonable costs, attorney's fees, and all other expenses in connection with this Note.

**13. *Notice of Default.*** So long as any amount under this Note shall remain unpaid, the Holder will, unless the Maker otherwise consents in writing, promptly give written notice to the Maker in reasonable detail of the occurrence of any Event of Default, or any condition, event or act which with the giving of notice or the passage of time or both would constitute an Event of Default.

## ARTICLE III
### DEFAULT

**14. *Events of Default.*** Any of the following events shall constitute an "Event of Default" hereunder:

a. Failure by the Maker to pay the principal or Interest, if any, of this Note when due and payable on the Maturity Date.

b. The entry of an order for relief under Federal Bankruptcy Code as to the Maker or approving a petition in reorganization or other similar relief under bankruptcy or similar laws in the United States of America or any other competent jurisdiction, and if such order, if involuntary, is not satisfied or withdrawn within sixty (60) days after entry thereof; or the filing of a petition by the Maker seeking any of the foregoing, or consenting thereto; or the filing of a petition to take advantage of any debtor's act; or making a general assignment for the benefit of creditors; or admitting in writing inability to pay debts as they mature; or

c. Failure by the Maker to pay the principal and Interest, if any, of this Note concurrent with a Pre-Payment Event; or

d. The breach of any covenant made by the Maker in this Note.

**15. *Acceleration.*** Upon any Event of Default (in addition to any other rights or remedies provided for under this Note), at the option of the Holder or any holder hereof, all sums evidenced hereby, including all principal, accrued but unpaid Interest, fees and all other amounts

5

due hereunder, shall become immediately due and payable. If an Event of Default relating to certain events of bankruptcy or insolvency of the Maker occurs and is continuing, the principal of and interest, if any, on this Note will become and be immediately due and payable without any declaration or other act on the part of the Holder or any holder hereof. This Note shall bear interest at the rate of twenty-five (25%) percent per annum upon the occurrence of an Event of Default ("Default Interest"). Payments of the Default Interest shall be due every thirty (30) days following the occurrence Event of Default.

*16. No Waiver.* Failure of the Holder or any holder hereof to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent Event of Default, or in the event of continuance of any existing Event of Default after demand or performance thereof.

*17. Pursuit of any Remedy.* The Holder or holder hereof may pursue any remedy under this Note without notice or presentment. The Holder or any holder hereof has the right to direct the time, method and place of conducting any proceeding for exercising any remedy available to the Holder or any such holder hereof under this Note.

ARTICLE IV

MISCELLANEOUS

*18. Amendments.* No amendment or waiver of any provision of this Note, nor consent to any departure by the Maker herefrom, shall in any event be effective unless the same shall be in writing and signed by the Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

*19. Notices.* All notices and other communications provided for hereunder shall be in writing (including telecopier communication) and mailed, telecopied, or delivered, to the Maker or the Holder, as applicable, at their respective addresses specified on the signature pages hereof, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All such notices and communications shall, when mailed or telecopied, be effective when deposited in the mails or telecopied with receipt confirmed, respectively.

*20. No Waiver; Remedies.* No failure on the part of the Holder to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. All rights, powers and remedies of the Holder in connection with this Note are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

*21. Severability; Headings.* If any one or more provisions of this Note shall be held to be illegal, invalid or otherwise unenforceable, the same shall not affect any other provisions of this Note and the remaining provisions of this Note shall remain in full force and effect. Article

6

and paragraph headings in this Note are included herein for convenience of reference only and shall not constitute a part of this Note for any other purpose or be given any substantive effect.

**22. *Binding Effect; Transfer.*** This Note shall be binding upon and inure to the benefit of the Maker and the Holder and their respective successors and assigns. The Holder may not assign or otherwise transfer, or grant participations in, this Note or all or any portion of its rights hereunder or its interest herein to any person or entity, without the prior written consent of the Maker which consent shall not be unreasonably withheld. The Maker may not assign or otherwise transfer its rights or obligations hereunder or any interest herein without the prior written consent of the Holder. Any attempted assignment by the Maker or the Holder in contravention of this paragraph shall be null and void and of no force or effect.

**23. *Enforcement.*** It is agreed that time is of the essence of this Note and in the event of default of the terms of this Note, the Maker agrees to pay all costs of collection or enforcement, including reasonable attorneys' fees and if there is a default in payment of any sum due hereunder.

**24. *Governing Law.*** This Note shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York without regard to conflicts of laws principles. The venue of any legal proceeding taken in connection with this Note will be Detroit, Michigan.

**25. *Independence of Covenants.*** All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or be otherwise within the limitations of, another covenant shall not avoid the occurrence of an Event of Default or event which with notice or lapse of time or both would become an Event of Default if such action is taken or condition exists.

**26. *Interpretation.*** The Holder and the Maker hereby waive the benefit of any statute or rule of law or judicial decision which would otherwise require that the provisions of this Note be construed or interpreted more strongly against the party responsible for the drafting thereof.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

7

*IN WITNESS WHEREOF,* this Note has been issued as of date first written above.

MAKER:

Ecology Coatings, Inc.

/s/ Adam S. Tracy, Esq.
Adam S. Tracy, Esq.
Vice President, General Counsel & Secretary

Mailing Address of Holder:

Mitch Shaheen

Mailing Address of Maker:

Ecology Coatings, Inc.
c/o Adam S. Tracy, General Counsel
35980 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304

8

# EXHIBIT

# C

ALLONGE TO
PROMISSORY NOTE
DATED JUNE 18, 2008

This Allonge (the "Allonge") executed the 10th day of July, 2008 attached to and forming a part of a Promissory Note, dated June 18, 2008 (collectively, the "Note"), made by Ecology Coatings, Inc., a Nevada corporation (the "Maker") in favor of Mitch Shaheen (the "Holder") in the original principal amount of One Hundred Fifty Thousand and 00/100 dollars ($150,000/00) together with interest thereon.

1. The Seventh Paragraph of the Note is hereby amended and restated in its entirety as follows:

7. *Conversion.* If at any time before the Maturity Date, the Maker completes a New Offering, the Maker shall give the Holder the option to convert this Note, in whole or in part, into a number of the same type of Maker's securities issued in the New Offering (the "Issued Securities"). The number of Issued Securities issued upon conversion of this Note shall be determined by dividing the principal amount of the Note by the price per share at which the Issued Securities were sold in the New Offering (the "Conversion Price"), rounding any fractional result down to the near whole share. No fractional shares shall be issued upon conversation of this Note. In lieu of fractional shares, the Holder shall pay cash (based on the Conversion Price) equal to any fraction of a share remaining (the "Cash Payment"). Notwithstanding the foregoing, should the Company fail to complete a New Offering, the Holder may elect to convert this Note, in whole or part, into shares of the Maker's Common Stock at a price of zero and 50/100 dollars ($.50) per share.

2. In all other respects, the Note is confirmed, ratified and approved and, as amended by this Allonge, shall continue in full force and effect.

IN WITNESS WHEREOF, the Payor and Payee have caused this Allonge to be executed as of the 10th day of July, 2008

ECOLOGY COATINGS, INC.

/s/ Adam S. Tracy
By: Adam S. Tracy, Esq.
Its: Vice President, General Counsel

Accepted and agreed to:

MITCH SHAHEEN

By: Mitch Shaheen

# EXHIBIT D

EX-10.39 2 k32689exv10w39.htm PROMISSORY NOTE

**Exhibit 10.39**

No. 2

US $100,000.00

July 10, 2008

**PROMISSORY NOTE**

*FOR VALUE RECEIVED*, the undersigned, Ecology Coatings, Inc., a Nevada corporation (the "The Maker"), promises to pay to the order of Mitch Shaheen (the "Holder"), the principal amount of One Hundred Thousand and 00/100 dollars ($100,000.00), together with interest thereon as provided below.

ARTICLE I

TERMS OF REPAYMENT

*1. Interest.* The Note shall bear interest ("Interest") equal to twenty-five (25%) percent per annum on the unpaid principal balance, computed on a three hundred and sixty-five (365) day year, during the term of the Note. The Maker shall pay all Interest on or before the Maturity Date. In no event shall the rate of Interest payable on this Note exceed the maximum rate of interest permitted to be charged under applicable law.

*2. Payments.* All payments by the Maker under this Note shall first be credited against costs and expenses provided for hereunder, second to the payment of any penalties, third to the payment of accrued and unpaid interest, if any, and the remainder shall be credited against principal. All payments due hereunder shall be payable in legal tender of the United States of America, and in same day funds delivered to the Holder by cashier's check, certified check, or any other means of guaranteed funds to the mailing address provided below, or at such other place as the Holder or any holder hereof shall designate in writing for such purpose from time to time. If a payment hereunder otherwise would become due and payable on a Saturday, Sunday or legal holiday, the due date thereof shall be extended to the next succeeding business day, and Interest, if any, shall be payable thereon during such extension.

*3. Maturity Date.* All outstanding principal and interest shall be payable on August 10, 2008 (the "Maturity Date").

*Pre-Payment Demand.* If at any time before the Maturity Date the Maker completes an underwritten public offering of its common stock or other form of security convertible into common stock pursuant to an effective registration statement under the Securities Act of 1933 (the "Act"), as amended, or a managed private offering exempt from registration under Section 4 (2) of the Act and Regulation D promulgated thereunder (collectively, a "New Offering") which results in proceeds received by the Maker net of underwriting discounts and commissions, of at least One Million and 00/100 dollars ($1,000,000.00) (a "Pre-Payment Event"), then at the sole and absolute discretion of the Holder, and upon written demand to the Maker (the "Pre-Payment Notice"), all amounts owed under this

1

Note shall become due and payable within fifteen (15) days following Maker's receipt of the Pre-Payment Notice.

   *5. Exemption from Restrictions.* It is the intent of the Maker and the Holder in the execution of this Note that the indebtedness hereunder be exempt from the restrictions of the usury laws of any applicable jurisdiction. The Maker and the Holder agree that none of the terms and provisions contained herein shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of any applicable jurisdiction. In such event, if any holder of this Note shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of the maximum rate permitted to be charged by the laws of any applicable jurisdiction, all such sums deemed to constitute interest in excess of such maximum rate shall, at the option of such holder, be credited to the payment of this principal amount due hereunder or returned to the Maker.

   **6.** The indebtedness evidenced by this Note is hereby expressly subordinated, to the extent and in the manner hereinafter set forth, in right of payment to the prior payment in full of all the Maker's Senior Indebtedness, as hereinafter defined.

   a.   As used in this Note, the term "Senior Indebtedness" shall mean the principal of an unpaid accrued interest on: (i) indebtedness of the Maker or with respect to which the Maker is a guarantor, in excess of Fifty Thousand and 00/100 dollars ($50,000.00), to banks, insurance companies, or other financial institutions regularly engaged in the business of lending money, which is for money borrowed by the Maker in the ordinary course of business; (ii) any of the three (3) promissory notes made by the Maker in favor of Hayden Capital USA, LLC, a Delaware limited liability company, on February 4, 2008 and May 20, 2008, (the "Senior Notes"); (iii) any of the two (2) promissory notes made by the Maker dated March 1, 2008, or (iv) any such indebtedness or any debentures, notes or other evidence of indebtedness issued in exchange for such Senior Indebtedness, or any indebtedness arising from the satisfaction of such Senior Indebtedness by a guarantor.

   b.   If there should occur any receivership, insolvency, assignment for the benefit of creditors, bankruptcy, reorganization or arrangements with creditors (whether or not pursuant to bankruptcy or other insolvency laws) sale of all or substantially all of the assets, dissolution, liquidation or nay other marshaling of the assets and liabilities of the Maker, or if this Note shall be declared due and payable upon the occurrence of any Event of Default with respect to any Senior Indebtedness, then: (i) no amount shall be paid by the Maker in respect to the principal of and interest on this Note at the time outstanding, unless and until the principal of an interest on the Senior Indebtedness then outstanding shall be paid in full; (ii) no claim or proof of claim shall be filed with the Maker by or on behalf of the Holder that shall assert any right to receive payments in respect of the principal of and interest on this Note, except

2

subject to the payment in full of the principal of and interest on all of the Senior Indebtedness then outstanding. If there occurs an Event of Default that has been declared in writing with respect to any Senior Indebtedness, or in the instrument under which any Senior Indebtedness is outstanding, permitting the holder of such Senior Indebtedness to accelerate the maturity thereof, then, unless and until such Event of Default shall have been cured or waived or shall have ceased to exist, or all Senior Indebtedness shall have been paid in full, no payment shall be made in respect of the principal of or interest on this Note, unless within thirty (30) days after the happening of such event of default, the maturity of such Senior Indebtedness shall not have been accelerated.

c.    Subject to the rights, if any, of the holders of Senior Indebtedness under this Section 6 to receive cash, securities or other properties otherwise payable or deliverable to the Holder of this Note, nothing contained in this Section 6 shall impair, as between the Company and the Holder, the obligation of the Company, subject to the terms and conditions hereof, to pay to the Holder the principal hereof and interest hereon as and when the same become due and payable, or shall prevent the Holder of this Note, upon default hereunder, from exercising all rights, powers and remedies otherwise provided herein or by applicable law.

d.    Subject to the payment in full of all Senior Indebtedness and until this Note shall be paid in full, the Holder shall be subrogated to the rights of the holders of Senior Indebtedness (to the extent of payments or distributions previously made to such holders of Senior Indebtedness pursuant to the provisions of Section 6 above) to receive payments or distributions of assets of the Maker applicable to the Senior Indebtedness. No such payments or distributions applicable to the Senior Indebtedness shall, as between the Company and its creditors, other than the holders of Senior Indebtedness and the Holder, be deemed to be a payment by the Company to or on account of this Note; and for the purposes of such subrogation, no payments or distributions to the holders of Senior Indebtedness to which the Holder would be entitled except for the provisions of this Section 6 shall, as between the company and its creditors, other than the holders of Senior Indebtedness and the Holder, be deemed to be a payment by the Company to or on account of the Senior Indebtedness.

## ARTICLE II
## COVENANTS

*7. Conversion.* If at any time before the Maturity Date, the Maker completes a New Offering, the Maker shall give the Holder the option to convert this Note, in whole or in part, into a number of the same type of Maker's securities issued in the New Offering (the "Issued Securities"). The number of Issued Securities issued upon conversion of this Note shall be

3

determined by dividing the principal amount of the Note by the price per share at which the Issued Securities were sold in the New Offering (the "Conversion Price"), rounding any fractional result down to the near whole share. No fractional shares shall be issued upon conversation of this Note. In lieu of fractional shares, the Holder shall pay cash (based on the Conversion Price) equal to any fraction of a share remaining (the "Cash Payment"), Notwithstanding the foregoing, should the Company fail to complete a New Offering, the Holder may elect to convert this Note, in whole or part, into shares of the Maker's Common Stock at a price of zero and 50/100 dollars ($.50) per share.

**8. Options.** In partial consideration of this Note, the Maker shall issue to Holder a option to purchase One Hundred Thousand (100,000) shares of the Maker's Common Stock (the "Consideration Option"). The Consideration Option will be immediately exercisable, in whole or part, into the "Underlying Shares." The Options will have an exercise price equal to Zero and 50/100 dollars ($.50). The Options will be delivered in a form acceptable to Holder.

**9. Piggyback Registration.** If the Conversion Shares and the Underlying Shares (collectively, the "Shares") have not been otherwise registered and at any time the Maker proposes to file a registration statement, whether or not for sale for the Maker's own account, on a form and in a manner that would also permit registration of shares (other than in connection with a registration statement on Forms S-4 or S-8 or any similar or successor form) the Maker shall give to Holder, written notice of such proposed filing promptly, but in any case at least twenty (20) days before the anticipated filing. The notice referred to in the preceding sentence shall offer the holder(s) holding the Shares the opportunity to register such amount of the Shares as he may request (a "Piggyback Registration"). Subject to this Section, the Maker will include in each such Piggyback Registration (and any related qualification under state blue sky laws and other compliance filings, and in any underwriting involved therein) that portion of the Shares with respect to which the Maker has received written requests for inclusion therein within twenty (20) days after the written notice from the Maker is given. The holders holding any portion of the Shares will be permitted to withdraw all or part of the Shares from a Piggyback Registration at any time prior to the effective date of such Piggyback Registration. Notwithstanding the foregoing, the Maker will not be obligated to effect any registration of shares under this Paragraph 7 as a result of the registration of any of its securities solely in connection with mergors effected pursuant to a Form S-4 Filing.

**10. Covenants Regarding Registration**

   a.   The Maker shall use its best efforts to have any registration statement declared effective at the earliest possible time, and shall furnish such number of prospectuses as shall be reasonably required.

   b.   The Maker shall bear all costs, fees and expenses in connection with a Piggyback Registration,

   c.   The Maker will take all necessary action which may be required in qualifying qualifying or registering the Shares included in any Piggyback Registration for offering and sale under the securities or blue sky laws of such states as are

requested by the holders of such Shares, provided that the Maker shall not be obligated to execute or file any general consent to service or process or to qualify as a foreign corporation to do business under the laws of any such jurisdiction.

**11. Indemnification.** The Maker shall, at The Maker's expense, protect, defend, indemnify, save and hold Holder harmless against any and all claims, demands, losses, expenses, damages, causes of action (whether legal or equitable in nature) asserted by any person or entity arising out of, caused by or relating to the Note, including without limitation the construction of the Note and the use or application of the proceeds of the Note, and The Maker shall pay Holder upon demand all claims, judgments, damages, losses and expenses (including court costs and reasonable attorneys' fees and expenses) incurred by Holder as a result of any legal or other action arising out of the Note as aforesaid.

**12. Attorneys Fees.** The Maker shall reimburse Holder for all reasonable costs, attorney's fees, and all other expenses in connection with this Note.

**13. Notice of Default.** So long as any amount under this Note shall remain unpaid, the Holder will, unless the Maker otherwise consents in writing, promptly give written notice to the Maker in reasonable detail of the occurrence of any Event of Default, or any condition, event or act which with the giving of notice or the passage of time or both would constitute an Event of Default.

## ARTICLE III

### DEFAULT

**14. Events of Default.** Any of the following events shall constitute an "Event of Default" hereunder:

a. Failure by the Maker to pay the principal or Interest, if any, of this Note when due and payable on the Maturity Date.

b. The entry of an order for relief under Federal Bankruptcy Code as to the Maker or approving a petition in reorganization or other similar relief under bankruptcy or similar laws in the United States of America or any other competent jurisdiction, and if such order, if involuntary, is not satisfied or withdrawn within sixty (60) days after entry thereof; or the filing of a petition by the Maker seeking any of the foregoing, or consenting thereto; or the filing of a petition to take advantage of any debtor's act; or making a general assignment for the benefit of creditors; or admitting in writing inability to pay debts as they mature; or

c. Failure by the Maker to pay the principal and Interest, if any, of this Note concurrent with a Pre-Payment Event; or

5

d. The breach of any covenant made by the Maker in this Note.

*15. Acceleration.* Upon any Event of Default (in addition to any other rights or remedies provided for under this Note), at the option of the Holder or any holder hereof, all sums evidenced hereby, including all principal, accrued but unpaid Interest, fees and all other amounts due hereunder, shall become immediately due and payable. If an Event of Default relating to certain events of bankruptcy or insolvency of the Maker occurs and is continuing, the principal of and interest, if any, on this Note will become and be immediately due and payable without any declaration or other act on the part of the Holder or any holder hereof. This Note shall bear interest at the rate of twenty-five (25%) percent per annum upon the occurrence of an Event of Default ("Default Interest"). Payments of the Default Interest shall be due every thirty (30) days following the occurrence Event of Default.

*16. No Waiver.* Failure of the Holder or any holder hereof to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent Event of Default, or in the event of continuance of any existing Event of Default after demand or performance thereof.

*17. Pursuit of any Remedy.* The Holder or holder hereof may pursue any remedy under this Note without notice or presentment. The Holder or any holder hereof has the right to direct the time, method and place of conducting any proceeding for exercising any remedy available to the Holder or any such holder hereof under this Note.

ARTICLE IV

MISCELLANEOUS

*18. Amendments.* No amendment or waiver of any provision of this Note, nor consent to any departure by the Maker herefrom, shall in any event be effective unless the same shall be in writing and signed by the Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

*19. Notices.* All notices and other communications provided for hereunder shall be in writing (including telecopier communication) and mailed, telecopied, or delivered, to the Maker or the Holder, as applicable, at their respective addresses specified on the signature pages hereof, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All such notices and communications shall, when mailed or telecopied, be effective when deposited in the mails or telecopied with receipt confirmed, respectively.

*20. No Waiver; Remedies.* No failure on the part of the Holder to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. All rights, powers and remedies of the Holder in connection with this Note are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

6

**21. Severability; Headings.** If any one or more provisions of this Note shall be held to be illegal, invalid or otherwise unenforceable, the same shall not affect any other provisions of this Note and the remaining provisions of this Note shall remain in full force and effect. Article and paragraph headings in this Note are included herein for convenience of reference only and shall not constitute a part of this Note for any other purpose or be given any substantive effect.

**22. Binding Effect; Transfer.** This Note shall be binding upon and inure to the benefit of the Maker and the Holder and their respective successors and assigns. The Holder may not assign or otherwise transfer, or grant participations in, this Note or all or any portion of its rights hereunder or its interest herein to any person or entity, without the prior written consent of the Maker which consent shall not be unreasonably withheld. The Maker may not assign or otherwise transfer its rights or obligations hereunder or any interest herein without the prior written consent of the Holder. Any attempted assignment by the Maker or the Holder in contravention of this paragraph shall be null and void and of no force or effect.

**23. Enforcement.** It is agreed that time is of the essence of this Note and in the event of default of the terms of this Note, the Maker agrees to pay all costs of collection or enforcement, including reasonable attorneys' fees and if there is a default in payment of any sum due hereunder.

**24. Governing Law.** This Note shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York without regard to conflicts of laws principles. The venue of any legal proceeding taken in connection with this Note will be Detroit, Michigan.

**25. Independence of Covenants.** All covenants hereunder shall be given independent effect so that if a particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or be otherwise within the limitations of, another covenant shall not avoid the occurrence of an Event of Default or event which with notice or lapse of time or both would become an Event of Default if such action is taken or condition exists.

**26. Interpretation.** The Holder and the Maker hereby waive the benefit of any statute or rule of law or judicial decision which would otherwise require that the provisions of this Note be construed or interpreted more strongly against the party responsible for the drafting thereof.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

7

*IN WITNESS WHEREOF*, this Note has been issued as of date first written above.

MAKER:

Ecology Coatings, Inc.

/s/ Adam S. Tracy, Esq.

Adam S. Tracy, Esq.
Vice President, General Counsel & Secretary

Mailing Address of Holder:

Mitch Shaheen

Mailing Address of Maker:

Ecology Coatings, Inc.
c/o Adam S. Tracy, General Counsel
35980 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304

8